Ed.) 322, 326; Colvin v. Burnet, 17 Wend. 564; People v. Arnold, 4 N. Y. 508; Miller v. Garlock, 8 Barb. 153. * * * The use and enjoyment requisite to support the prescriptive right claimed relate as well to the use or diversion of the water as to the continuance of the dam. Stiles v. Hooker, 7 Cow. 266. The right to the usufruct of the water (except for purposes of navigation) is proprietary, and that of the state is paramount. Gould v. Railroad Co., 6 N. Y. 522; Crill v. City of Rome, 47 How. Prac. 398, and cases there cited. And although the riparian owner may, as such, use water of the river, and has rights in that respect which cannot be impaired by individuals, such rights are subordinate to that of the state; and, as against the latter, he cannot appropriate them to his use. People v. Tibbetts, 19 N. Y. 523. While the right to maintain the dam upon the bed depends upon the requisite uninterrupted continuance of it at the place where located, the right to use the water of the river is dependent on the like continuous diversion of it."

From an examination of the evidence in the case before us it is quite apparent that there is no evidence from which the trial court would have a right to find a continuous adverse possession of the water or bed of the stream for the requisite time. There was evidence that some 50 years ago there was a dam located near where the present one is, but it only remained a few years. There is no evidence that a dam was maintained continuously for 40 years. The present dam was built only a short time before the commencement of the action. The motion was, we think, properly denied.

It is claimed by the defendant that the order granting an extra allowance is not justified by the proof as to "the value of the subject-matter involved." Code, § 3253. We are of the opinion that the subject-matter of the litigation is the right of the state to have the waters of the Mohawk river flow free and unobstructed. There is no proof of the value of that right, and therefore no basis for the extra allowance, and none should be allowed.

Judgment and order denying motion to set aside verdict affirmed, with costs. Order denying motion to amend answer affirmed, with $10 costs and disbursements. Order granting motion for extra allowance reversed, with $10 costs and disbursements, and motion denied. All concur.

---

DAVITT v. NATIONAL LIFE ASS'N OF HARTFORD, CONN.

(Supreme Court, Appellate Division, First Department. December 23, 1898.)

1. REINSURANCE—PHYSICAL CONDITION.
  The question whether one is "well," as conditioned in a contract for reinsurance, is a question of fact for the jury.

2. SAME—CONDITIONS.
  One holding a life policy in a company which was absorbed by defendant company, by accepting a condition imposed to his becoming insured in defendant company, instead of standing on his rights under his original contract, is bound thereby, it being explicitly incorporated in the agreement, though he did not understand it.

Appeal from trial term, New York county.

Action by Bridget Davitt against the National Life Association of Hartford, Conn. From a judgment for plaintiff, defendant appeals. Affirmed.

The following is the opinion of the court below (SPRING, J.):

Michael Davitt had carried a life policy in the United Life Insurance Company since 1888. In 1896 this company and the defendant entered into a consolidation agreement, whereby the United Life was absorbed by the defendant company. Notice of this project was mailed to each policy holder of the United Life, with a request to insure with the defendant. A notice of this kind, accompanied with the purported contract of consolidation, was mailed to and received by Davitt, and in pursuance of these he became insured with defendant. One of the conditions prescribed in this contract, preliminary to his acceptance by the new company, was that the insured "shall be alive and well" when the acceptance was received by the defendant at its home office. Davitt died, and his widow, the beneficiary named in the policy, sued to recover $2,000, the stipulated sum agreed to be paid in the United Life policy, which was not in fact surrendered, but was retained by Davitt, as the scheme of consolidation did not contemplate the issue of new policies in lieu of those issued by the defunct company. The only question litigated was as to the physical condition of Davitt when accepted by the defendant, and that was submitted to the jury as a specific question of fact, and a verdict rendered that he was well at that time. This was a fair proposition of fact, and the verdict of the jury settles it conclusively. It was arranged in open court by the respective counsel that the court should consider and determine the effect to be given to this verdict, and briefs have been submitted in compliance with this suggestion. It is contended on behalf of defendant that its plan of insurance involved a system of deferred payments, and by this plan a reduction must be made from the face of the policy of $510. In the contract of consolidation two conditions were imposed prerequisite to becoming insured in the defendant company,—one, already adverted to, pertaining to the physical condition of Davitt, and, "second, that the rate to be charged, the manner of payment, and distribution of the same under this contract, the rules and regulations of the National Life Association as to deferred premiums upon natural premium policies shall apply hereto, and be the same as required of other policy holders of the National Life Association under natural premium policies which are at this date being issued. * * *" The relation between Davitt and defendant was contracted, and whatever obligation was undertaken by him preliminary to and as a part of the agreement must be performed by him. The defendant had made an agreement with the United Life Company. Before vitality could be injected into that contract as between Davitt and defendant, these two must assent to it. That done, it constituted their agreement. The defendant had a right to exact any condition precedent to the acceptance of Davitt as its beneficiary. He was not bound to accept it. He could still retain his liability on his policy against the United Life; but, if he did seek to avail himself of the offer made by the defendant, he did it recognizing the force of the two conditions required by it. It is too late now to urge his failure to understand them. They were explicitly incorporated in the agreement, and Davitt presumptively comprehended them; and, if not, he should have done so before his acceptance. The evidence is unmistakable that, under the system of deferred payments referred to, the value of Davitt's policy increased the longer the agreement with defendant existed; that at the time of his death its value was only $1,490, and for that sum, with interest from January 3, 1897, he is entitled to judgment against defendant under the verdict of the jury, besides costs, with 5 per cent. extra allowance.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ.

E. D. Worcester, for appellant.
M. C. Sykes, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of SPRING, J., in the court below.